Good morning, Your Honors, I'm Scott Hackenberg for the claimant in this matter, Dean Napoli. This case was originally filed in the 19th Judicial District Court as a breach of contract in age of discrimination claim. The defendant had it removed to the Middle District of Louisiana and proceeded, the company Janssen Pharmaceuticals proceeded to answer and substitute itself as the proper defendant in this case. They are a subsidiary of Johnson & Johnson. After a brief amount of discovery, the trial court resolved the employment issue as an ERISA claim pursuant to two cross motions for summary judgment. She denied the plaintiff's motion and granted Janssen's motion. Subsequently, the plaintiff voluntarily dismissed the age discrimination claim with prejudice, making this case ripe for appeal of final judgment. Just briefly, a little background, Mr. Napoli was hired by a company called Sios, Inc. as a hospital representative in 2001. In 2004, that company was acquired by Johnson & Johnson who kept sort of a hands-off approach to it until 2009 when they renamed the company Janssen Pharmaceuticals. In 2010, the plaintiff was terminated and he then applied for severance benefits through my partner, John Henchey, who contacted the employer, spoke to them over the telephone. In response, we received a letter from the Johnson & Johnson General Counsel dated September 27, 2010, which basically stated, since he was terminated for a Group 1 violation, he is not entitled to any severance. The letter does not specify a particular Group 1 violation or provide any other details as to the underlying facts of this alleged termination for a Group 1 violation. If the company had provided a letter prior to or at the termination stating that Mr. Napoli, is that how you said it? Yes, Napoli. Was being terminated for a violation, would this have been sufficient, even if it didn't contain the details of the specific violation? If the letter had been in the personnel file and it found its way into the administrative record, it would have satisfied the first part of the problem, which is evidence of why he was terminated. As we've briefed, there's really two issues here on the evidentiary part of this, is when you go to the administrative record, not only is there no evidence as to the details of the Group 1 violation, there's no evidence that he actually was fired for a Group 1 violation, unless you consider the post-termination letter from one lawyer to another as evidence, which I've argued is not. So it would still be missing the details? It's missing any details. No, even under my hypo, it would be missing the details, and so it would still be fatally flawed under your theory. It would be flawed on the merits of whether it was, in fact, a valid Group 1 termination. That's the question I have for you. Okay. And that is, there's a difference between saying, in connection with your claim, that we have to know that that was the reason he was fired, and saying, well, he didn't commit a Group 1 violation, so we're going to litigate that in the context of this ERISA case. Those are two different issues. It seems to me you have a legitimate claim, possibly, if you have a legitimate claim. It is that you have a right to know that that really was the reason he was fired, okay? But the notion, it seems to me, that you're going to re-litigate in the ERISA context whether, in fact, you did commit a violation, that I find harder to accept. So you better, in the course of your argument, address that. Okay. And I do understand the distinction, and I think it is important, which is why I've pointed out that there's no evidence of why he was terminated, and there's certainly no evidence that he was validly terminated for a specific reason. And do we have to look at both of those things? And I think we do, and that sort of dovetails into the fact that he's also entitled to a full and fair review by the administrator, by the plan administrator. The problem is not, we would have loved to have brought this up at the trial court level, but we were bound by the administrative records. So what we have to do is we have to go back and look at what the plan administrator did or did not do. Was that a full and fair review? The fact that Mr. Napoli, on two separate occasions, requested the underlying information, tell me what the Group 1 violation was. And just to be clear, you can look up Group 1 violation in the severance plan, and it's two pages. It's 22 bullet points. It's really very difficult for somebody to read that and figure out what they did wrong. It would be like handing somebody the criminal code and saying you committed a crime. So we wanted to back, he wanted the underlying information for the appeal at the administrative level. They would not provide it to him. He asked for the, what, and this I have to back up, is in the letter, the September 2010 letter, there is also a mention, furthermore, since he wrongfully expensed over $3,000 on his American Express account, the company hereby demands repayment. We have to presume those two things are connected, that the Group 1 violation is something to do with wrongful expensing. I've never heard Janssen actually say that, and I don't believe they say it in their briefs specifically the Group 1 violation was the wrongful expensing, but we've been operating under the assumption that those two things are related. In that regard, Mr. Napoli requested, tell me what expense policy was in effect, show me the expenses that were unauthorized under that policy, and give me my personnel file. Those are the three things that he needed. They were relevant information, and he needed those to respond at the administrative level to the allegation we fired him for a Group 1 violation. So let's say you get all that. Okay. So then you say, well, as a matter of fact, I wasn't in, that's not my American Express card, somebody falsified all that, so I didn't really do any of that. Are you proposing to litigate that in this context? Well, when you say litigate, at the administrative level. I mean, at the administrative level, are you claiming that if everything had been done here according to the Marquis of Queensberry rules, that you would have had the right to litigate the propriety of your dismissal, of your client's dismissal, in the ERISA case? Yes. However, the burden on Jansen was extraordinarily low. All they had to do was put on substantial concrete evidence to support the statement, you were terminated for a Group 1 violation. If they had put in evidence, and we had put in evidence, it's more than a scintilla, less than a preponderance. They could have decided, well, we looked at Mr. Napoli's evidence, we read his letter, we read an affidavit, we looked at the documents he provided, and we looked at the documents that Jansen gave us. We conclude it was a Group 1 violation. If that had happened, I wouldn't be standing here. What if, so you actually want, in this administrative, in this ERISA case, you want to litigate whether your client actually violated the policy. If they come in and they say, here's the evidence, we actually fired him for this reason, okay, and it's clear, that's what they thought they were doing. And your client says, well, I wasn't even there on the day in question, so we're going to litigate over whether I did or didn't do that, in this context, that's what you want to do? Well, again, I don't think the word litigate is correct. We wanted the right to participate in the process. We wanted a full and fair review, which includes, if you look at the ERISA regulations, they specifically state, and I quote the regs on page 14 and 15 of my original brief, but they specifically state, there is no full and fair review when a claimant is not provided with copies of all documents, records, information relevant to the claimant's claim for benefits. So they have to respond. If he says, I want to see the backup, they have to give it to him. Then you say, well, my client wasn't even in wherever that American Express charge was made. He wasn't even there. He was in church. Sure. So we're going to litigate that, too? Well, yes, but again, if it had been done properly and he had been allowed to participate in the procedure, the burden of proof on Jansen is extraordinarily low. Yeah, but you're saying we are going to re-litigate whether my client actually filed a false expense report, I guess. We're going to re-litigate that in the context of this ERISA case. We're going to actually re-litigate the merits of whether he did or didn't violate the company policy. I think that's one of the purposes of the appeal process under the severance clause. I'm not sure I agree with you, but I wanted to be sure that that is actually what you're asking for. But I'm also saying, aside from the evidentiary standpoint, aside from the fact that there's specifically on page 510 at footnote 6, it recognizes that the absence of a full and fair review is an independent basis to overturn a denial of benefits. In other words, if the claimant is not provided with the information so that he can fairly participate in the process at the initial level and at the appellate level, if he's not provided with that information, that's not a full and fair review, and you as a court can say, the company did not comply with the ERISA regs. It's not a full and fair review, and we can overturn the denial on that basis. When you say litigate, you don't mean litigate, like call witnesses and that sort of thing. No, no, no. You just mean that the plan administrator needs to have some documentation on which to base their decision. Correct. And that they send out a notice and say, I'm deciding the case, and you submit your documentation, and the plan administrator then looks at the documentation and makes a decision. And it's upheld as long as it's under this very low standard. If there's any basis at all, there's substantial evidence in the file. So it just means that they have to gather the documentation before they make a decision. They don't call witnesses and make credibility determinations. They just have to gather something from which to make their decision.  That is exactly what I'm saying. You're not saying have a trial in an ERISA matter before . . . we're not sending it back to the plan administrator and say, you try this issue. There's a fact issue here, and you have to determine who's the credible person. Right. That's exactly right. What is the fact issue, though? That's my question. The fact issue is, did the employer fire me . . . For a Group 1 violation. For a Group 1 violation. Right. The fact issue is not, did my client commit a Group 1 violation? I don't think we ever get to that in this case because, as I've pointed out, unless you rely on that attorney's letter, which is hearsay, it's not corroborated, it's just a lawyer . . . one lawyer writing another lawyer after termination saying he was fired for a Group 1 violation, he doesn't reference it, he doesn't say what he looked at to come to that conclusion. He just simply makes a legal conclusion in a letter. It's hearsay. It's uncorroborated. It can't serve as a piece of evidence. So we don't have to go to that second step of determining whether or not he committed a Group 1 violation. In this case, to decide this case, we just have to say there's no evidence in the record that he was fired for a Group 1, for you to win this case. Right. Nope. And we stop there. We don't determine whether or not he actually committed it or not. That's absolutely what I'm saying. No. We just say that they didn't determine that he was fired for that with any documentary evidence. They had no concrete evidence to base that determination on in the administrative record. Right. And again, as I said, there's an alternate reason that you can overturn this, and that is that he was not provided with the documents to put on his claim. And I don't like . . . That's a separate reason that . . . It's a separate basis. . . . the determination was not appropriate. Correct. It's a separate basis to overturn. Again, I would call your attention to the Truitt case, the footnote 6 says it's an independent basis to overturn a denial of benefits. In that case, they found that the company had provided the information. In this case, not only was it never provided at the administrative level, they filed a counterclaim for these alleged unauthorized expenses. They wouldn't provide the information in discovery. They objected to it, and then when we filed our motion for summary judgment saying there's no evidence to support this counterclaim that he wrongfully expensed any items, they put up no opposition. They put no information in at that time. So we have never seen the alleged documentation for this supposed Group 1 violation if, in fact, it has anything to do with the wrongful expensing, which we can only assume it does. So on that basis, I think there's two ways that you can grant this without ever getting to the merits of whether he did or he did not actually commit a Group 1 violation. It's extraordinary to be litigating at this level in the Fifth Circuit over a gotcha piece of paper, why I did it, et cetera. It's just extraordinary to me that this is being litigated if all you're saying is all we want to know is why, and they're saying, no, I ain't going to tell you. It almost sounds schoolyard, frankly, if that's the gravamen of the issue. The rest of the case, at this level, arguing in the Fifth Circuit, just say, show me the reason. No, I'm not going to show you I don't have to. We're good. We'll go to the Fifth Circuit, and they'll make you do it. I mean, pardon me if that sounds a little bit basic in a big case. That's just me. You've got a red light. We've got your argument. That's my editorial on this deal, and maybe I'm missing something, so I'm waiting to hear what the other side, but so far, all I heard is, I don't have to tell you, and you can't make me. All right, here we go, Mr. McCormick. The stage is set. Is there more to it than that? Absolutely, Your Honor. I figured you were going to say that. Always another side to the story, and Your Honor, I'm Richard McCormick. I represent the defendant in the case. Your Honor, the argument that's being presented in this case is somewhat disingenuous because counsel knows, if he's even talked to his client one time, that all of this information that he says we have an obligation to produce in an ERISA context was already provided to his client before he was terminated. They went back and forth with all the expense reports. There's printouts. There's emails. Is that in this record? That is not in this record, Your Honor. It's not appropriate to be in this record. The reason it's not in this record, Your Honor, is this is an ERISA claim. As Judge King was noting before, it's not appropriate to litigate the reason for the termination in the context of an ERISA claim. The letter from John O'Shaughnessy in the Office of General Counsel is not just a letter from one lawyer to the other. The letter is a statement by an officer of the company to Mr. Napoli's attorney that specifically says that he was terminated for a Group 1 violation and is not entitled to any severance since he wrongfully expensed over $3,000 on his American Express account. I don't know why you need any more than that. You do not need any more than that, Your Honor. That's exactly correct. And we didn't think it was appropriate or legal for him to litigate whether he did or didn't in the context of an ERISA claim. He is trying to get around the fact that he does not have a cause of action for wrongful termination under Louisiana law. What can I sue them for? I've got to sue them for something. I'm going to sue them for severance and I'm going to sue them claiming I was discriminated against on the basis of age. Well, the discrimination on the basis of age claim had absolutely no merit. They finally threw that out with prejudice. But this remaining claim is the ERISA claim for severance benefits. So what do you look to? You look to the terms of the ERISA plan and the law. And the law says you have to have concrete evidence. That concrete evidence is right here, Exhibit 3 and Exhibit 1, the policy itself and the statement from the officer of the company. It's no different than getting a statement from the HR director saying he was terminated because he falsified his expenses. He does not have a right to litigate or re-litigate that underlying whether he did or didn't. Does the letter say he was terminated for falsifying his expenses? It says he was terminated for a Group 1 violation and is not entitled to any severance. Furthermore, since he wrongfully expensed over $3,000 on his American Express account, the company hereby demands repayment. In other words, he stole- Where is the actual evidence that he was terminated for a Group 1 violation, though? I'm sorry, Your Honor? Where is the evidence that he was terminated for a Group 1 violation? Why isn't this like vega? The evidence is this letter from an officer of the company, a legal officer of the company telling him that he was fired for a Group 1 violation and it was wrongfully expensing over $3,000 on his American Express accounts. He stole from the company, in other words. They fired him. Right. It doesn't actually say that, but I understand- No. That is the crux of it, Your Honor. But there's nothing prior to or at the term of termination that's in this record. Not in this record because it is not required to be and it's not appropriate to be in this record. We have lots and lots of ERISA situations. I mean, many of us handled ERISA cases and it's very normal that you put the documents from the termination in the thing. This is a strange record to only have this post-termination in the ERISA proceeding letter. This is very odd. How much time went by between when he was terminated and when this whole thing came up to the ERISA? More than a year. More than a year. It was more than a year. It was like 15, 16 months later that he actually communicated with the company and said, oh, by the way, pay me my severance. So it was quite a while. And, Your Honor, I submit that the time for him to go back to the company, well, strike that. He did litigate this, so to speak, with the company before he hired his lawyer. The company and he went back and forth over these expenses. He knows it. I've seen all the emails and all the spreadsheets and all the records of the expenses. That was not appropriate for this proceeding. Well, then why is it appropriate for you to mention that repeatedly at this argument? Well, because I keep asking him about it. It's not in the record. Well, because I think counsel should, plaintiff counsel, I think should have acknowledged that this issue of the expense report and going back and forth and challenging it was done before he was terminated. That's been completely omitted from any mention here. And it makes it sound as though they just out of the blue made up a reason and said take it or leave it. Well, if there were actually substantial evidence in the record, then we wouldn't be having this discussion in the first place. Again, Your Honor, all I can tell you is it is not appropriate or necessary to have that evidence in this record. Well, what case do you have for that? I've gone through all the circuits on my own because this wasn't briefed in this way to try to find any case in any circuit that a single letter such as this after the fact would be substantial evidence. What is your best substantial evidence case from this or any other circuit that says that a one letter like this is good enough? Your Honor, the cases I cited in my brief, which this Court has cited in so many other erisic cases. Can you please give me a case that says a single letter such as this one after the fact is indeed substantial evidence? I don't. I'm not aware of that case. There is no such case. No, there's cases that define what constitutes substantial evidence. And it's more than a scintilla, less than a preponderance that provides reasonable support for the decision. And in this case, that letter is the letter from John O'Shaughnessy advising that he was terminated for the Group 1 violation because he wrongfully expensed over $3,000 on his American Express account. And when you look at the policy, the performance and conduct standards policy, you see that it says that examples of Group 1 violations include but are not limited to willfully making any false statement in records submitted to the company, including expense reports. That's precisely what happened. Is that in this record? Pardon? That thing you were just talking about? That is. That is included in the record. It's Exhibit 1. Okay. Now, let me ask you another thing. Let's assume that we agreed with your opposing counsel. We said, oh, boy, you've won. The good news is you've won. So what happens then? He just gets the money. He doesn't go back and, we say, make a better record to the employer here. Under Vega, he just gets the severance pay, right, or not? What happens if he wins? Does he just get the severance pay, period? Well, no, I think, Your Honor, that he I don't think he would get the severance payments because he hasn't shown that he's eligible for them. Well, but under Vega, the thing I can't, I sort of went back and read Vega. And Vega says, you know, that famous footnote 13 in Vega says, well, we're not going to go back and let the administrator give him another opportunity to make a record, you know. That's that. Case over. Judgment. Rendered. Reverse and rendered. So is that what happens now? We go ahead and we say, okay, fine, you win. So pay him. I don't, I don't believe that that is what, what should happen in this case, Your Honor. I don't think it's what should happen either, but I'm sure not clear after reading that footnote 13 in Vega that that's not what we have to do. So is it that you seek a remand if that, if they work for them? At most, it would be a remand to the plan administrator to reopen the, the administrative record and, and, and look at the underlying expense reports that support the termination decision. There, there is that evidence, Your Honor, and, and, and if, if the, if this was remanded to the plan administrator, that evidence could be put into the record and brought back before the court and he would lose his case. I know. I'm clear on that. And he knows it. He knows it. He doesn't want that evidence in the record, believe me. Right, but. No, no, he's for footnote 13 in Vega. That's what he's for. But footnote. Which is an in-bank case. But footnote 13 in Vega actually says, in some special circumstance, a remand to the administrator for further considerations may be justified. So footnote 13 in Vega actually provides for the remand that you say would be appropriate. Is that correct? Yes. That's correct. That's correct. And, and, Your Honor, I mean, that, I, I, I believe that the correct result is to affirm the judgment below, but if the court were not to do that, then I would suggest that the other, the alternative is to remand it to. And let you put in the evidence. And, and we'll have Mr. Napoli put in his evidence and we'll put in our evidence and we'll see whose evidence is more persuasive. That's, that's all I can suggest. But it, I think it's very, very disingenuous for Mr. Napoli to stand up and, and argue that he doesn't know why he was terminated when they went around and around and back and forth for weeks with plenty of evidence that supported the termination. He didn't have a claim for wrongful termination, so he had to come up with something. And let's, let's do it under ERISA. The problem for him, though, was when he chose ERISA, the, ERISA doesn't allow a full-blown litigation like this in the context of a benefit plan because your, your, your governing, your, your, your authority is the plan document itself. What do the plan documents say? What do the plan documents say you need to present? We gave him every opportunity to present any information, any evidence he wanted to show that he was entitled to severance benefits and he didn't because he couldn't. So he has not supported his claim under the plan that he's entitled to severance benefits at all. Thank you. Thank you. Let me first say we didn't choose ERISA. We simply were responding to the denial of severance that my client sought. My client did not seek to re, be reinstated to work for this company. There's a lot of things that went on outside of the record and I've tried to avoid talking about things that are outside of the record, but. Let me ask you something. What is it that you think we have to do now? I've raised this issue about footnote 13 in Vegas, so do we just render judgment for your client? Go ahead and pay him the severance benefit? I believe that would be appropriate and I believe that the, the record supports, I've, I've documented in the record the, the amount of 53,640, which is a formula to enhance benefits based on his salary at the time. There's a calculation in the record that gets you that number and I believe that everything is there that, that the court needs to, to render that calculation. I don't, I certainly don't think it would be appropriate to send it back to trial court because the trial court would be bound by the administrative record and we, we, we would be back where we started. There are things that are not in the administrative record and, and to suggest that we have these documents and we're pretending like we don't is, I would, is extraordinarily disingenuous. My client did not go back and forth for weeks with, with his employer. He was informed on his last day that he was being fired for expense account issues. He was never shown the document and what he suspects and the reason that we continued to ask for that documentation is because he suspects that they were retroactively implying the new Johnson and Johnson policy, the new Janssen policy to expenses that were authorized at the time that he, he entered them, that he requested them. So you do want to litigate whether or not he committed a fireable offense? Absolutely we can. I, I, I, I, I'm not afraid to see the documentation. I've been asking for it in, in this litigation. It was relevant to the counterclaim. They would not produce it. Well, why isn't in this case what we should do pursuant to footnote 13 of vega to remand this to the administrator for further considerations? Why is it not appropriate? Yes. Why isn't that the proper, proper solution in this particular case? It would depend on, it would depend on if you found the, the record was simply incomplete under the, the first prong of my argument or whether you found that Janssen failed to cooperate, failed to provide a full and fair review. That in itself, the fact that they did not provide, you know, we could talk about what's in it. I don't know what's in it. My client doesn't have copies of this stuff. If we don't, we're not pretending like they're, we would, we were asking for it throughout the litigation. It was never provided. We have, we had a right to it under the ERISA rules and it was not provided. To stand up here and say, well, it was bad for, it was bad for me. So why do I want it? I don't know that. I would like to see the information because we have a strong suspicion that they were attempting to retroactively apply new expense rules. They pursued your client for these, for these expense? That was dismissed. They filed a counterclaim and did not put on any evidence of the wrongful expenses in response to my summary judgment. That was dismissed. That was the part of my summary judgment that was granted because they would not put up any information to support that claim, even though they asserted it as a counterclaim. And last, I do want to point out too, the letter is Johnson and Johnson General Counsel. It's not a representative of Janssen. It's not the HR person from Janssen writing this letter and saying, we fired him for this. This is General Counsel for Johnson and Johnson, the owner of Janssen, writing a lawyer, writing to another lawyer. So to characterize this as some sort of evidentiary piece of evidence, it wouldn't be accurate. It's not in his personnel file. It was written after termination. And again, I would say it's just rank hearsay and it's not corroborated by anything whatsoever in the administrative record. The administrator should have reviewed something from the personnel file. And that's the part of the administrative record that's so hard for me to understand is when you look at it, it's nothing but the policy, the severance policy, and letters back and forth, either between lawyers or from the plan administrator. And in fact, in the opposition, they were relying on their own letters to support their decisions. The plan administrator was writing letters and then claiming that his conclusions in his letter were evidence. There's just nothing in the record, and that's the problem. If Your Honors think a remand to the administrator is appropriate, I mean, that's certainly one way to do it. But I do believe that it's much more appropriate just to simply decide that the decision should be overturned and the severance be awarded. Thank you. All right. Thank you, Counsel, from both sides, for your briefing to be submitted. Before we take up the last case, but you all can come on forward, we're going to recess for a real, real short moment, and we'll be back.